# UNITED STATES DISTRICT COURT
# THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Federal Deposit Insurance Corporation as Receiver for AmTrust Bank, <br><br> Plaintiff, <br><br> vs. <br><br> MINCO Development Corporation, Kara M. Rembis, Mark C. Lester and Drew Mortgage Associates, Inc., <br><br> Defendants. | CIV. A. No.: _____ |

# COMPLAINT

Plaintiff Federal Deposit Insurance Corporation, as Receiver for AmTrust Bank, Cleveland, Ohio ("FDIC-R"), for causes of action against Defendants MINCO Development Corporation, Kara M. Rembis, Mark C. Lester, and Drew Mortgage Associates, Inc. (collectively, "Defendants"), alleges as follows:

## I.   THE PARTIES

1. The Federal Deposit Insurance Corporation ("FDIC") is a corporation organized and existing under the laws of the United States of America. Under the Federal Deposit Insurance Act ("FDIA"), the FDIC is authorized to be appointed as receiver for failed insured depository institutions. AmTrust Bank, Cleveland, Ohio ("AmTrust") was a federally chartered savings bank with its principal place of business in Cleveland, Ohio. On December 4, 2009, AmTrust was closed by

the Office of Thrift Supervision and the FDIC was appointed as Receiver pursuant to 12 U.S.C. § 1464(d)(2)(A) and 12 U.S.C. § 1821(c)(5).  Under the FDIA, the FDIC as receiver succeeds to all claims held by banks for which it is the receiver. 12 U.S.C. § 1821(d)(2)(A)(i).  Plaintiff owns the subject claims and has standing to prosecute this action as Receiver for AmTrust.

2. The FDIC-R is informed and believes and thereon alleges that, Defendant MINCO Development Corporation ("MINCO") is a Massachusetts corporation, engaging in the business of providing real estate appraisals, and was at all times relevant herein authorized to do business in the state of Massachusetts.

3. The FDIC-R is informed and believes and thereon alleges that at all relevant times herein, Defendant Kara M. Rembis ("Rembis") was and is an individual residing in the state of New Hampshire.  Rembis is a Massachusetts Residential Appraiser (Lic. No. 102185), and at all relevant times, Rembis was doing business in the state of Massachusetts.

4. The FDIC-R is informed and believes and thereon alleges that at all relevant times herein, Defendant Mark C. Lester ("Lester") was and is an individual residing in the state of Massachusetts.  Lester is a Massachusetts Residential Appraiser (Lic. No. 626), and at all relevant times, Lester was doing business in the state of Massachusetts.  MINCO, Rembis, and Lester are collectively referred to herein as the "Appraisers".

5. The FDIC-R is informed and believes and thereon alleges that, Defendant Drew Mortgage Associates, Inc. ("Drew") is a Massachusetts corporation and was at all relevant times herein authorized to do business in the state of Massachusetts.

## II. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction for this action pursuant to 12 U.S.C. § 1811 et seq., 12 U.S.C. § 1819(b)(1) and (2), and 28 U.S.C. §§ 1331 and 1345.  Actions to which the FDIC-R is a party are deemed to arise under the

laws of the United States. The FDIC, including in its capacity as Receiver, has the authority to sue and complain in any court of law, and is empowered to pursue claims held by the Bank, including its claims against the Defendant. 12 U.S.C. § 1819.

7. The venue of this action in this Court is proper because a substantial part of the events or omissions giving rise to the claim and the injury alleged herein occurred within this District, and the Defendants have sufficient minimum contacts with this jurisdiction.

### III. FACTUAL BACKGROUND

8. As part of its regular business practice, AmTrust entered into contracts with mortgage brokers who submitted mortgage loans for funding or purchase by AmTrust. This business was a regular part of the secondary mortgage market, and was commonplace throughout Massachusetts at the time of the transactions described herein. Transactions in this market required recent appraisals prepared in accordance with professional standards. These aspects of the market are common knowledge in the real estate industry, and real estate appraisers such as the Appraisers are aware that appraisals prepared for mortgage brokers are relied upon in the making of residential loans and in subsequent transactions involving those loans.

9. On or about December 30, 1998, AmTrust[1] and Drew entered into a Master Correspondent Loan Purchase Agreement (the "Broker Agreement") pursuant to which Drew sold and/or delivered to AmTrust mortgage loans including the loan that is the subject of this lawsuit. The Broker Agreement provides that the residential mortgage loans submitted by Drew must satisfy specified criteria, in accordance with the representations and warranties explicitly provided for in the Broker Agreement.

---

[1] AmTrust entered into this agreement through its dba "Ohio Savings Bank".

10. Specifically, pursuant to section 6.1(a) of the Broker Agreement, Drew represented and warranted that "[t]he information in the Underwriting Package is complete, true, and correct."

11. Under Section 6.1(m) of the Broker Agreement, Drew further represented and warranted that the Appraisal complied "with all applicable laws and regulations …, and the requirements of FNMA and FHLMC."

12. On or about February 8, 2006, AmTrust funded a mortgage loan in the amount of $637,000 which was brokered by Drew for borrower Paul Galzerano (the "Loan") and which was secured by a deed of trust recorded against the real property located at 281 Main Street, Groveland, Massachusetts (the "Property"). The FDIC-R subsequently discovered Drew delivered to AmTrust a false and negligently prepared appraisal in the loan package for the Loan.

## COUNT I: BREACH OF CONTRACT (THIRD PARTY BENEFICIARY)
### (Against the Appraisers)

13. The FDIC-R realleges and incorporates by reference paragraphs 1 through 12, inclusive, of this Complaint.

14. The FDIC-R is informed and believes that in January 2006, Drew contracted with the Appraisers to prepare a Uniform Residential Appraisal Report for the Property to be used for lending purposes. In entering into the agreement, the Appraisers expressly contemplated that the appraisal would be used by Drew for the purpose of brokering a loan to mortgage lenders in the secondary market.

15. The FDIC-R is informed and believes that on or about January 25, 2006, the Appraisers completed a Land Appraisal Report concerning the Property (the "Appraisal"). The Appraisal valued the Property at $910,000.

16. The appraiser's certification attached to the Appraisal expressly provides, in part, as follows:

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice…

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this assignment…

\*\*\*

6. I researched, verified, analyzed and reported the prior sales of the comparable sales for the minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in the report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

\*\*\*

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the difference between the subject property and the comparable sales.

\*\*\*

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area where the property is located.

\*\*\*

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this

> appraisal report any adverse conditions…observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported the effect of the conditions on the value and marketability of the subject property.
> 15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this report are true and correct.
>
> \*\*\*
>
> 23. The borrower, **another lender at the request of the borrower, the mortgagee or its successors and assigns,** mortgage insurers, government sponsored enterprises, **and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves one or more of these parties.** [Emphasis added]
>
> \*\*\*
>
> 25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability…

17. In reliance on the Appraisal, AmTrust funded the Loan on or about October 1, 2007.

18. The Loan went into default and AmTrust foreclosed on the Property. Plaintiff thereafter conducted an investigation and discovered that the Appraisers breached the contract in that the Appraisal had been negligently prepared and contained material misrepresentations, including: (1) misrepresenting the value of the Property; (2) using improper and negligently selected comparable sales; (3) not complying with the Uniform Standards of Professional Appraisal Practice; (4) misrepresenting the size of the Property; and (5) failing to adequately disclose,

discuss, and/or analyze the impact of the Property's proximity to commercial properties and a two-lane highway.

19. AmTrust performed and completed all of its obligations owed to the Appraisers as required, except as to any acts or obligations AmTrust was excused from performing by the Appraisers' breach.

20. The FDIC-R, as AmTrust's successor-in-interest, has suffered foreseeable damage as a result of the Appraiser's breach of the agreement.

## COUNT II: NEGLIGENT MISREPRESENTATION
### (Against the Appraisers)

21. The FDIC-R realleges and incorporates by reference paragraphs 1 through 12, inclusive, and 16 of this Complaint.

22. The FDIC-R is informed and believes and that on or January 25, 2006, the Appraisers prepared the Appraisal, which misrepresented the value of the Property as $910,000.

23. The Appraisal was submitted to AmTrust for the purpose of facilitating a mortgage loan.

24. In preparing the Appraisal, the Appraisers owed AmTrust a duty to act in accordance with the law and in accordance with the custom, practices and standards of conduct prevailing in the industry for an appraiser.

25. In breach of that duty, the Appraisal contained numerous material misrepresentations, failures and deficiencies including, but not limited to: violations of the Uniform Standards of Professional Appraisal Practice; negligently misrepresenting the value of the Property; failing to use and analyze appropriate comparable sales; misrepresenting the Property's size; and failing to adequately disclose, discuss, and/or analyze the impact of the Property's proximity to commercial buildings and a two-lane highway.

26. At the time the Appraisers prepared the Appraisal, they had no reasonable grounds for believing the representations were true. These representations were material to AmTrust's decision to fund the Loan, and the Appraisers intended for lenders such as AmTrust to rely on the representations made in the Appraisal as part of mortgage lending transactions.

27. AmTrust reasonably relied on the representations made by the Appraisers in the Appraisal in deciding to fund the Loan secured by the Property, and AmTrust further relied upon the Appraisers to conduct business in accordance with the duty of care implied by the law and the custom of the appraisal industry, and believed that the information submitted by the Appraisers was true and had been reviewed in accordance with the Uniform Standards of Professional Appraisal Practice and other standards prevalent in the appraisal industry.

28. Plaintiff has been damaged because AmTrust reasonably relied upon the representations made by the Appraisers. AmTrust reasonably believed that the Appraisers would properly carry out their professional duties when AmTrust made the decision to purchase the Loan secured by the Property on the secondary market. The FDIC-R, as AmTrust's successor-in-interest, has incurred damages in an amount to be proven at trial.

## COUNT III: BREACH OF CONTRACT
### (Against Drew)

29. The FDIC-R realleges and incorporates by reference paragraphs 1 through 28, inclusive, of this Complaint.

30. Drew expressly represented and warranted all statements and loan documentation would be complete, true and correct.

31. Specifically, pursuant to section 5.1(a) of the Broker Agreement, UAMC represented and warranted that "[t]he information in the Underwriting Package is complete, true, and correct."

32. Under Section 6.1(m) of the Broker Agreement, Drew further represented and warranted that the Appraisal complied "with all applicable laws and regulations …, and the requirements of FNMA and FHLMC."

33. The information contained in the subject loan files was not true and accurate. Indeed, the Appraisal contained numerous material misrepresentations, failures, and deficiencies including, but not limited to: (1) misrepresenting the value of the Property; (2) using improper and negligently selected comparable sales; (3) failing to comply with the Uniform Standards of Professional Appraisal Practice; (4) misrepresenting the size of the Property; and (5) failing to adequately disclose, discuss, and/or analyze the impact of the Property's proximity to commercial properties and a two-lane highway.

34. As a result, Drew has breached the representations and warranties in the Broker Agreement. Pursuant to the terms of the Broker Agreement, Drew must indemnify for the losses sustained on the Loan – more specifically, under paragraph 8.6 of the Broker Agreement, Drew is obligated to indemnify and hold AmTrust harmless "from and against any and all losses, damages, penalties, fines, forfeitures, legal fees and related costs, judgments and other costs and expenses resulting from any claim, demand, defense or assertion based on or grounded upon, or resulting from, [] a breach of any representation or warranty of [Drew] contained in this [Broker] Agreement …"

35. AmTrust and the FDIC-R have performed all of their obligations to Drew under and in accordance with the Broker Agreement, except any obligations AmTrust and the FDIC-R have been prevented or excused from performing by the acts and breaches of Drew.

36. As a proximate result of Drew's breach of contract, the FDIC-R has suffered losses in an amount to be proven at trial and is therefore entitled to its damages as well as the reasonable attorneys' fees incurred in pursuing this action.

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment as follows:

1. For compensatory damages, according to proof at trial, against all Defendants;

2. For prejudgment interest at the legal rate;

3. For costs of suit and reasonable attorneys' fees incurred herein; and

4. For such other and further relief as the Court deems just and proper.

DATED:  December 3, 2012

                                      **CHACE RUTTENBERG & FREEDMAN, LLP**
                                      One Park Row, Suite 300
                                      Providence, RI  02903
                                      Telephone: (401) 453-6400:
                                      Fax: (401) 453-6411

                          By:  ___/s/ Robert D. Fine_____
                                      **Robert D. Fine**.
                                      Mass Bar No. 165360
                                      RFine@crfllp.com
                                      **Douglas J. Emanuel**
                                      Mass Bar No. 628368
                                      DEmanuel@crfllp.com